**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ELGENE KENTAY PORTER, #412934,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:14-cv-01798** |
| | ) | |
| **DEBRA JOHNSON, Warden,** | ) | **Judge Campbell** |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

The Court previously entered an order and memorandum denying relief as to all but two of the claims asserted in petitioner Elgene Porter's petition for the writ of habeas corpus under 28 U.S.C. § 2254. The Court determined that additional briefing would assist the Court in resolving the two remaining claims, denominated by the Court as Claims 27 and 33,[1] specifically on the issues of whether these claims (or portions thereof) were procedurally defaulted and what standard of review applies to them. The Court therefore appointed counsel to represent the petitioner and set a rebriefing schedule. The petitioner, through appointed counsel, has now filed a supplemental brief asserting that relief should be granted on the basis of the two remaining claims (ECF No. 59), and the respondent has submitted a supplemental brief opposing relief (ECF No. 65). The petitioner, with the Court's permission, filed a reply brief (ECF No. 68).

The matter having been more fully explored, the Court finds, for the reasons set forth herein, that the petitioner is not entitled to relief and that an evidentiary hearing is not necessary. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief). The Court will therefore dismiss the remaining claims and enter judgment in favor of the respondent.

## I.    PROCEDURAL BACKGROUND

In July 2009, after being found guilty at jury trial, the petitioner was sentenced to 3 years of incarceration for conspiracy to commit aggravated burglary, 5 years for aggravated burglary, 5 years for

---

[1] Claim 27 is designated as Issue 10 in the petitioner's § 2254 petition (ECF No. 1, at 27), and as Claim 32 in the respondent's answer (ECF No. 47, at 47). Claim 33 is designated by the petitioner as Issue 16 (ECF No. 1, at 28), and as Claim 29 in the respondent's answer (ECF No. 47, at 50).

attempted aggravated robbery, and 22 years for aggravated rape, all to be served concurrently; he received 10-year sentences on each of two counts of aggravated kidnapping, to be served consecutively to each other and to the remainder of the sentence, for a total effective sentence of 42 years. (ECF No. 45-2, at 38–44 (Judgments).)

At a hearing on the petitioner's motion for a new trial, trial counsel brought to the trial court's attention a letter he had received from the petitioner's mother, just a few days prior to the hearing, in which she stated that "witnesses willing to testify" had overheard the rape victim tell her husband, when she heard the petitioner testify during the sentencing hearing, that the petitioner was not the person who raped her. (*See* ECF No. 45-9, at 3 (Letter to counsel).) Trial counsel requested a hearing to consider the evidence referenced by the letter. The trial court accepted a copy of the letter into evidence and, after the prosecutor addressed the merits of the claim based on this "new evidence," denied the request for a separate hearing and denied relief based on the letter. (ECF No. 45-8, at 19 (Motion for New Trial Hr'g Tr.).) The issue was not raised in the direct appeal.

The Tennessee Court of Criminal Appeals affirmed the conviction and sentence. *State v. Porter* ("Porter I"), No. M2009-02443-CCA-R3-CD, 2011 WL 915673 (Tenn. Ct. Crim. App. March 14, 2011), *perm. appeal denied* (Tenn. May 25, 2011).

The petitioner filed a *pro se* petition for post-conviction relief that incorporated, in an attachment to the petition entitled "Additional Grounds," seventeen separate grounds for relief on the basis of ineffective assistance of trial and appellate counsel. (ECF No. 45-19, at 3–54.) Appointed counsel later filed an amended petition that asserted eighteen other claims of ineffective assistance of trial counsel. (ECF No. 45-19, at 73–77.) The amended petition did not expressly or implicitly cross-reference or adopt the claims set forth in the original petition. After a hearing at which only the claims raised by counsel were addressed, the trial court denied relief, again referring specifically only to those claims raised by appointed counsel in the amended petition and not to any of the claims asserted in petitioner's original *pro se* petition.

That decision was affirmed on appeal as well. *Porter v. State* ("*Porter II*"), No. M2012-01139-CCA-R3-PC, 2013 WL 1197730 (Tenn. Ct. Crim. App. March 26, 2013), *perm. appeal denied* (Tenn. Sept. 11, 2013). As discussed in more detail below, the petitioner then filed a petition to rehear under Rule 39 of the Tennessee Rules of Appellate Procedure (ECF No. 45-24), which the Tennessee Court of Criminal Appeals denied. (ECF

No. 45-25.) The Tennessee Supreme Court denied review. (ECF No. 45-27.)

The petitioner thereafter filed his timely § 2254 petition in this Court. As previously noted, the Court entered an order denying most of the petitioner's claims but appointing counsel for the petitioner and requesting additional briefing from both parties on two of the petitioner's claims.

## II.    STANDARD OF REVIEW

The petition in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes significant limitations on the federal courts' authority to issue writs of habeas corpus. Most notably, it forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings," unless the state-court decision resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In addition to limiting the federal courts' review of claims that were adjudicated on the merits in the state courts, AEDPA generally precludes habeas review altogether of claims that were not properly exhausted in the state courts or were procedurally barred by the state courts, except in very limited circumstances. Specifically, section 2254(b)(1) provides that a federal court may not award habeas relief to an applicant in state custody "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State," "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). In order to satisfy § 2254(b)'s exhaustion requirement, the prisoner must have "fairly presented" to the state court the "substance of a federal habeas corpus claim." *Picard v. Connor*, 404 U.S. 270, 275, 278 (1971); *accord Anderson v. Harless*, 459 U.S. 4, 6 (1982). Additionally, the state court must have had a "fair opportunity to apply controlling legal principles to the facts bearing upon [the] constitutional claim." *Anderson*, 459 U.S. at 6 (internal quotation marks omitted). If there remains a remedy under state law that a petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot entertain the merits of the claim. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

When a habeas court finds a claim to be unexhausted, it can, for good cause, stay the action and permit the petitioner to present his unexhausted claim to state court and then return to federal court for review

of his perfected petition. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). The court need not wait for exhaustion, however, if it determines that a return to state court would be futile. *See id.* ("[E]ven if a petitioner had good cause for that failure [to exhaust claims in state court], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Even where a state prisoner has exhausted available state-court remedies, a federal court may not consider "contentions of federal law which are not resolved on the merits in the state proceeding due to [the petitioner's] failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In addition, if a petitioner failed to fairly present a particular federal habeas claim to the state courts but has no remaining avenue available for doing so under state law, then the claim is deemed to be exhausted but procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Rust*, 17 F.3d at 160.

If a prisoner defaulted a federal claim in state court, review by the federal court is completely barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim would result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A petitioner can establish the requisite "cause" in two ways. First, a petitioner may "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective impediments include an unavailable claim or interference by officials that made compliance impracticable. *Id.* Second, constitutionally ineffective assistance of counsel constitutes cause. *Id.* at 488–89. Generally, however, if a petitioner asserts ineffective assistance of counsel ("IAC"), whether at trial or on appeal, as cause for a default, that IAC claim must itself have been presented to the state courts as an independent claim before it may be used to establish cause. *Id.* If the IAC claim was not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the IAC claim. *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000).

Until relatively recently, a prisoner could not demonstrate cause for default by claiming that his state

post-conviction counsel provided ineffective assistance. *See Coleman v. Thompson*, 501 U.S. 722, 752–53 (1992) (holding that post-conviction attorney error was not cause to excuse a default under the circumstances presented there). The holding in *Coleman* was based on the premise that an individual does not have a constitutional right to counsel in post-conviction proceedings, so the prisoner "must bear the risk of attorney error that results in a procedural default." *Id.* (internal quotations omitted).

Recent changes in the law, however, have enabled habeas petitioners in Tennessee to use the ineffective assistance of post-conviction counsel to establish "cause" to excuse a procedural default. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1315, 1320 (2012) (creating exception to *Coleman* where state law prohibits ineffective-assistance claims on direct appeal); *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013) (extending the scope of *Martinez* to states with procedural frameworks that make meaningful opportunity to raise ineffective-assistance claim on direct appeal unlikely); *Sutton v. Carpenter*, 745 F.3d 787, 792 (6th Cir. 2014) (holding that *Martinez* and *Trevino* apply in Tennessee). The holding in *Martinez*, however, is very narrow: It requires that the ineffective assistance of post-conviction counsel occur (1) during the "initial-review collateral proceeding,"(2) that the underlying IAC claim be "substantial," "which is to say that the prisoner must demonstrate that the claim has some merit," *id.* at 1318–19, 1320, and (3) that the claim concern the ineffectiveness of *trial* counsel. The creation of this narrow exception stemmed from the Supreme Court's recognition, "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim" of ineffective assistance of counsel. *Id.* at 1318.

Moreover, *Martinez* did not dispense with the "actual prejudice" prong of the standard for overcoming procedural default first articulated by the Supreme Court in *Coleman*, 501 U.S. at 750. To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his *actual* and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted).

III.    **DISCUSSION**

The facts established at trial are set out in some detail in the first memorandum opinion filed in this action (ECF No. 48), addressing the petitioner's other claims. The Court presumes familiarity with those facts and will not reiterate them here.

A.    **Claim 27**

In Claim 27, as enumerated by the Court, the petitioner asserts that:

Defense counsel failed to argue at the sentencing hearing and on first tier direct appeal that, under the facts and circumstances of the case, and under the due process protection afforded citizens under Article I, Section 8 and Article XI, Section 16 of the Tennessee Constitution and of the Fifth and Fourteenth Amendments to the Constitution of the United States and following the analysis of *Anthony* and its progeny, that the multiple convictions in Mr. Porter's case should merge into one conviction.

(ECF No. 1, at 27.)

The Court interprets the claim as asserting that trial and appellate counsel were ineffective for failing to argue under *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991), and its "progeny," *State v. Dixon*, 957 S.W.2d 532 (Tenn. 1997), that the petitioner's two convictions for aggravated kidnapping should be vacated as violating due process, because the actions upon which the kidnapping convictions were based were "essentially incidental" to the acts that constituted the other crimes of conviction. (*See* ECF No. 45-19, at 38–39.) The petitioner and the respondent dispute, first, whether this claim was properly exhausted in the state-court proceedings and, if not, whether the petitioner has established cause and prejudice to overcome the procedural default.

*(1)    Exhaustion*

The petitioner raised this claim in his initial *pro se* post-conviction petition (*id.*), but it was not included in the amended petition filed by post-conviction counsel ( ECF No. 45-19, at 73) or in the post-conviction appeal filed by counsel (ECF No. 45-21). Insofar as the claim relates to trial counsel at least, the petitioner also attempted to raise it in his *pro se* Rule 39 petition for rehearing in the Tennessee Court of Criminal Appeals. (ECF No. 45-24, at 125.)

In his Rule 39 petition, the petitioner asserted that he was entitled to a rehearing of the appeal in his case because, among other reasons, "for purposes of exhaustion of federal habeas corpus remedies, Appellant's intentions are to include the issues outlined in this petition to rehear, and he will also include them

in an application for permission to appeal to the Tennessee Supreme Court if necessary." (*Id.* at 6 (citing *Thomas v. Fortner*, 2009 WL 649733, at *7).) The petitioner identified several issues in his Rule 39 petition, including "whether post-conviction counsel's failure to interview, investigate and subpoena key witnesses and present necessary evidence to the post-conviction evidentiary [hearing] amounted to ineffective of assistance of counsel," and "whether *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), changes the entire standard of review of this case, in that counsel at the first stage of post conviction review was ineffective in failing to present the testimony of witnesses and evidence at the evidentiary hearing when that testimony and evidence would have established that trial counsel was absolutely unprepared to proceed with trial." (ECF No. 45-25, at 7.)

In the brief supporting his Rule 39 petition, the petitioner asserted that he "made numerous attempts to communicate to [post-conviction] counsel that he wanted for all of his issues to be presented to the court at the evidentiary hearing," but counsel "informed [the petitioner] that he did not want to present [his] issues as outlined in his *pro se* petition for relief from conviction or sentence, with additional grounds." (ECF No. 45-24, at 11.) The petitioner also argued that he was entitled to relief under *Martinez v. Ryan*, because post-conviction counsel was ineffective in failing to argue and present evidence to support the petitioner's IAC claims raised in his *pro se* petition or to include them in the appeal. (*Id.* at 20.) The petitioner specifically cross-referenced and attached his "additional grounds" for relief that were included in his *pro se* post-conviction petition.

In the *per curiam* order denying relief, the Tennessee Court of Criminal Appeals stated succinctly:

> This matter is before the Court upon Appellant's petition to rehear this Court's opinion filed March2 6, 2013. The Court has reviewed its opinion in light of the petition to rehear filed by the Appellant. Upon review, we conclude that the Appellant is not entitled to relief under Martinez v. Ryan, -- U.S. --, 132 S. Ct. 1309, 2012 WL 912950 (2012). After careful consideration, the Court concludes that the petition should be, and, is hereby DENIED.

(ECF No. 45-25.)

In the supplemental brief filed in this Court by appointed counsel, the petitioner argues that Claim 27 was clearly procedurally defaulted in post-conviction proceedings because (1) the claim was not included in the amended post-conviction petition filed by counsel; (2) post-conviction counsel presented no proof concerning Claim 27 at the post-conviction evidentiary hearing; (3) the trial court did not rule on the issues contained in Claim 27; (4) post-conviction counsel did not raise the issue on appeal; and (5) the court of appeals did not decide the claim. (ECF No. 59, at 4.) The petitioner now maintains that the filing of the Rule

39 petition does not change the conclusion that the claim is defaulted. He points out that the Tennessee Court of Criminal Appeals simply denied the petition, as a result of which "Claim 27 was never addressed on the merits by any state court." (*Id.* at 5 (citing *Castille v. Peoples*, 489 U.S. 346 (1989); *Lewis v. Sternes*, 390 F.3d 1019, 1031 (7th Cir. 2004)); *see also* ECF No. 68 (Pet'r Reply Br.), at 2 (citing *Olsen v. Little*, 604 F. App'x 387, 402–03 (6th Cir. 2015))).)

In her supplemental response brief, the respondent asserts that Claim 27 was exhausted in the petitioner's Rule 39 petition to the Tennessee Court of Criminal Appeals, citing *Thomas v. Fortner*, No. 3:08-cv-0274, 2009 WL 649733 (M.D. Tenn. March 11, 2009) (Echols, J.).[2] Indeed, in *Thomas*, the Court adopted the magistrate judge's determination that a particular claim in the petitioner's habeas petition was exhausted as a result of having been included in a Rule 39 motion to rehear and application for permission to appeal to the Tennessee Supreme Court, thus giving the state courts "a full and fair opportunity to rule on the claim," even though the state courts "declined to address the merits of the claim." *Id.* at *7 (citations omitted).[3]

More recently, however, the Sixth Circuit held that a petition for rehearing filed in the Kentucky Supreme Court, in the context of the case before it, "was not a proper place to raise a new federal issue." *Olson*, 604 F. App'x at 402. The appellate court's decision was premised on the Supreme Court's holding that, "where [a] claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor, [it does not] constitute fair presentation." *Id.* (quoting *Castille v. Peoples*, 489 U.S. at 351 (1989)). In *Castille*, the Court had held that new federal issues raised for the first time in a petition for *allocatur* to the Pennsylvania Supreme Court were not properly exhausted, because, under Pennsylvania law, *allocatur* review was "not a matter of right, but of sound judicial discretion, and an appeal will be allowed only when there are special and important reasons therefor." *Castille*, 489 U.S. at 347.

---

[2] The respondent concedes that, because the argument was not raised in the amended post-conviction petition, the case does not present the issue of whether *Martinez* applies when the alleged ineffective assistance of counsel consists of failing to provide evidentiary support for a claim that was raised in the post-conviction petition. Because the respondent does not argue that the petitioner's having raised the claim in his initial *pro se* post-conviction petition, standing alone, served to exhaust the claim, the Court likewise presumes that it did not.

[3] The Court considered the claim but denied relief on the basis that the claim was not cognizable in a habeas petition under 28 U.S.C. § 2254 absent exceptional circumstances, which did not exist in that case.

The *Olson* court construed *Castille* to "require[] federal habeas courts to examine the procedural context in which a claim is raised to determine whether it is one in which the merits are considered as of right or only in exceptional circumstances." *Olson*, 604 F. App'x at 402. It therefore considered the Kentucky rules and precedent governing when the Kentucky Supreme Court should consider the merits of a petition for rehearing and concluded that the "claim was not fairly presented to the Kentucky court" for purposes of § 2254. *Id.* Other circuit courts appear to be in accord. *See, e.g., Scott v. Franklin*, 122 F. App'x 980, 983 (10th Cir. 2005) (habeas claims were not exhausted in petition to rehear in the state appellate court where the petition to rehear raised issues that were not raised in the direct appeal and so were not properly brought in a petition to rehear); *Lewis v. Sternes*, 390 F.3d 1019, 1031 (7th Cir. 2004) (issue raised for the first time in petition for rehearing not fairly presented or exhausted for federal habeas purposes).

This Court likewise concludes that the petitioner's Rule 39 petition did not serve to exhaust Claim 27 in the state courts. Rule 39 of the Tennessee Rules of Appellate Procedure provides a list of reasons that may be considered in determining whether to grant a rehearing, including:

> (1) the court's opinion incorrectly states the material facts established by the evidence and set forth in the record; (2) the court's opinion is in conflict with a statute, prior decision, or other principle of law; (3) the court's opinion overlooks or misapprehends a material fact or proposition of law; and (4) the court's opinion relies upon matters of fact or law upon which the parties have not been heard and that are open to reasonable dispute.

Tenn. R. App. P. 39(a). This list is "neither controlling nor fully measuring the court's discretion" but instead "indicate[s] the character of reasons that will be considered." *Id.* Tennessee courts applying this rule, however, have repeatedly confirmed that "[a] petition for rehearing is not a vehicle in which a petitioner may seek relief from issues not previously presented to the Court." *Grimes v. Dotson*, No. W2005-00862-CCA-R3HC, 2005 WL 2453956, at *2 (Tenn. Ct. Crim. App. Oct. 4, 2005). Thus, claims that were not presented in the trial court are precluded from review in a petition for rehearing. *Id.* (citing Tenn. Code Ann. § 16-5-108 (appellate court's jurisdiction is appellate only)); *accord Hartley v. Chapman*, No. M2012-01034-CCA-R3-HC, 2013 WL 1869033, at *4 (Tenn. Ct. Crim. App. May 3, 2013) (issue not argued in lower court not properly raised in Rule 39 motion to rehear); *Advanced Photographic Solutions, LLC v. Nat'l Studios, Inc.*, 352 S.W.3d 431, 444 (Tenn. Ct. App. 2011) (denying relief on Rule 39 motion as to an issue that was not raised in a motion for new trial or on appeal and was therefore waived)*; State v. Mateen*, No. M2006-02295-CCA-R3-CD, 2008 WL 1904250, at *12 (Tenn. Ct. Crim. App. May 1, 2008) (denying *pro se* petitioner's Rule 39 motion arguing that "trial counsel

did not raise issues on appeal that he had requested to be raised and which he claims are meritorious," holding that "the determination of which issues to present on appeal is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel" and that the proper procedure for the petitioner was to file a petition for post-conviction relief (citations omitted)). Under the Tennessee courts' construction and application of Rule 39, it is clear that the purpose of a petition for rehearing is not to present issues that were defaulted as a result of not having been raised in initial-review post-conviction proceedings or on appeal. Consequently, although the petitioner may have raised the issue in his Rule 39 petition in an effort to exhaust it, it was not "fairly presented" to the state courts.

Further, the issue raised in Claim 27 in this Court is whether defense counsel was ineffective for failing to argue in the trial court (or on appeal) that the petitioner's kidnapping convictions violated due process. This is *not* the same question raised in the petitioner's Rule 39 petition. There, the actual claim was that the petitioner's post-conviction attorney was ineffective for failing to raise that particular claim of ineffective assistance of trial and appellate counsel (among many others) and that, under *Martinez*, the petitioner was entitled to review of the underlying IAC claim. In rejecting that argument, the Tennessee Court of Criminal Appeals stated only that it found that the petitioner was not entitled to relief under *Martinez*. Its succinct opinion cannot be read to mean that it accorded a merits review to the underlying IAC claim. More likely, the court determined that the *Martinez* claim, which had not previously been addressed by any court, was not properly brought for the first time in a Rule 39 petition for rehearing, and that *Martinez*, standing alone, did not provide a vehicle for consideration on the merits of the numerous claims—of which the claim denominated in this Court as Claim 27 was only one—defaulted as a result of post-conviction counsel's failure to address them in his amended petition, at the evidentiary hearing, or on appeal. To be sure, the petitioner also invokes *Martinez* in this Court to argue that the ineffective assistance of post-conviction counsel provides cause to overcome the default of the underlying claim, but that argument was actually the substantive claim in the state petition to rehear.

In sum, the Court concludes that Claim 27 was procedurally defaulted as a result of appointed counsel's failure to raise it in the amended petition, to present proof to support it at the evidentiary hearing, or to argue about it in the post-conviction appeal. The petitioner's attempt to exhaust the claim in his Rule 39 petition was unavailing simply because Rule 39 was not the appropriate vehicle for exhausting such a claim

and the state appellate court did not appear to address the claim on the merits.

### *(2)    The Application of* Martinez

Having concluded that the claim is procedurally defaulted, the Court must consider whether the petitioner can overcome the default, thus permitting habeas review of the claim, by showing (1) "cause for the default" and (2) "actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *cited in Martinez*, 132 S. Ct. at 1316. As set forth above, *Martinez* established that an attorney's error in initial-review collateral proceedings may qualify as cause for the procedural default of a claim of ineffective assistance of *trial* counsel.

Thus, insofar as the defaulted claim (Claim 27) encompasses a claim of ineffective assistance of *appellate* counsel (that "Defense counsel failed to argue . . . on *first tier direct appeal* (ECF No. 1, at 27)), *Martinez* does not provide cause to overcome the default of that claim. *See Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (holding that the ineffective assistance of post-conviction counsel does not provide cause, under *Martinez*, to excuse the default of a claim of ineffective assistance of appellate counsel). The petitioner therefore cannot overcome the procedural default of the claim of ineffective assistance of *appellate* counsel, and the claim must be denied to the extent it pertains to the conduct of the petitioner's counsel on direct appeal.

Regarding the petitioner's defaulted claim of ineffective assistance of *trial* counsel, to establish "cause" to overcome the default, the petitioner must show that (1) he has a "substantial" claim of ineffective assistance of trial counsel ("IATC"); and (2) post-conviction counsel was ineffective in failing to present the underlying IATC claim in the initial-review collateral proceeding (the trial court post-conviction proceeding). *See Atkins v. Holloway*, 792 F.3d 654, 660 (6th Cir. 2015) (summarizing *Martinez*, 132 S. Ct. at 1318–19, 1320–21).[4] If a petitioner successful establishes "cause" in steps one and two, the court then considers, in step three, whether the petitioner can demonstrate "actual prejudice" under *Coleman*. "Finally," according to the Sixth

---

[4] Two other elements are required to show "cause": that "the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and [that] state law requires that an 'ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding.'" *Trevino*, 133 S. Ct. at 1918 (quoting *Martinez*, 132 S. Ct. at 1318–19, 1320–21). Because *Sutton v. Carpenter*, 745 F.3d 787 (2014), established that Tennessee qualifies as a state in which IATC claims must be raised in post-conviction proceedings, and the IATC claims were first raised during the petitioner's state post-conviction proceedings, these elements have been established.

Circuit, "if the district court concludes that [the petitioner] establishes cause and prejudice as to any of his claims," the district moves on to step four: evaluation of the merits of the underlying IATC claim. *Atkins*, 792 F.3d at 660. As the Sixth Circuit further observed in *Atkins*:

> Under this framework, which is consistent with Supreme Court precedent . . . , [the petitioner] has a long way to go before the district court could even evaluate the merits of his claims. Moreover, even [a] finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted.

*Id.*

Although the Sixth Circuit suggests in *Atkins* that every step of the *Martinez* analysis is distinct from each other and from the merits question, in practice all the steps are inextricably intertwined. Determination of whether the petitioner's underlying IATC claim was "substantial" (step one) requires the Court to ask whether the petitioner has "demonstrate[d] that the claim has some merit." *Martinez*, 132 S. Ct. at 1318. Likewise, to determine whether state-post-conviction counsel was ineffective (step two), the district court must consider under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), whether post-conviction counsel's conduct was deficient for failing to raise the underlying IAC claim and whether the petitioner was prejudiced by the deficient performance. *See Newbury v. Stephens*, 756 F.3d 850, 871–72 (5th Cir. 2014) (noting that *Strickland* applies at this step, which requires the court to ask whether "there is a reasonable probability that [the petitioner] would have been granted state habeas relief had the evidence been presented in the state habeas proceedings"), *cited in Atkins*, 792 F.3d at 660. Determination of *Strickland* prejudice at that stage thus appears to require consideration of whether the underlying IATC claim was substantial. In other words, both steps of the "cause" question overlap with each other and require some examination of the merits of the underlying IATC claim.

Further, assuming that *Coleman*'s "cause for the default" has been established by the answers at steps one and two, the Court asks at step three whether the petitioner can demonstrate the "prejudice"—the "actual prejudice as a result of the alleged violation of federal law," required by *Coleman*, 501 U.S. at 750. To establish *Coleman* prejudice, a petitioner must demonstrate that the constitutional error "worked to his *actual* and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). For the court to make that determination, again,

it seems necessary to address the actual merits of the petitioner's defaulted IATC claim.[5]

In this case, the Court will not attempt to parse the distinctions between the *Martinez* layers of cause and prejudice, because the Court ultimately concludes that, however substantial the underlying IATC claim might have been, the petitioner would not have been entitled to relief on the merits of the claim if it had been raised. The Court therefore proceeds directly to an examination of the substance of the petitioner's IATC claim and its merits.

### (a)      State Law Governing the Petitioner's IATC Claim

The petitioner argues that trial counsel was ineffective for failing to argue under Tennessee law, particularly "*Anthony* and its progeny[,] that the multiple convictions in Mr. Porter's case violated his right to due process under the state and federal constitutions and should merge into one conviction." (ECF No. 1, at 27.) As the Court noted in the original Memorandum Opinion addressing the other claims in this case, the law in Tennessee concerning dual convictions for kidnapping and another offense such as rape or robbery is complex.

Tennessee statute defines aggravated kidnapping, in relevant part, as a "false imprisonment" committed "[t]o facilitate the commission of any felony or flight thereafter"; or "[w]ith the intent to inflict serious bodily injury on or to terrorize the victim or another"; or "[w]hile the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon." Tenn. Code Ann. § 39-13-304(a). A person commits the offense of "false imprisonment" if he "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-203(a)(1), (3), (5).

Well before the petitioner's conviction in 2009, Tennessee courts had recognized that, in some instances, the elements of a kidnapping charge might completely overlap with the elements of another

---

[5] The Ninth Circuit has likewise recognized the overlap between the cause and prejudice elements of a *Martinez* claim:

> Within the "cause" prong there is an element of "prejudice" that must be established: to show ineffective assistance of post-conviction relief counsel, a petitioner must establish a reasonable probability that the result of the post-conviction proceeding would have been different. The reasonable probability that the result of the post-conviction proceedings would have been different, absent deficient performance by post-conviction counsel, is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective. The prejudice at issue is prejudice at the post-conviction relief level, but if the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of post-conviction proceedings would have been different.

*Clabourne v. Ryan*, 745 F.3d 362, 376 (9th Cir. 2014).

accompanying crime upon a person, such that convictions for both kidnapping and the accompanying crime might violate principles of double jeopardy and due process. The Tennessee Supreme Court had therefore devised a two-part test for determining whether a kidnapping conviction satisfied due process. In *State v. Dixon*, 957 S.W.2d 532 (Tenn. 1997), to which the petitioner implicitly refers, the state court held that a reviewing court—not a jury—must first "decide whether the movement or confinement [of the kidnapping victim] was beyond that necessary to consummate the [underlying felony]." *Id.* at 535 (citing *State v. Anthony*, 817 S.W.2d 299, 306 (Tenn. 1991)). "If so, the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Id.* The Tennessee Supreme Court reaffirmed the *Dixon* test in *State v. Richardson*, 251 S.W.3d 438 (Tenn. 2008), not long before the petitioner's conviction. The petitioner's Claim 27, as originally articulated, is premised on trial counsel's failure to request a *Dixon* due-process analysis in the trial (or appellate) court.

Although *Dixon* clearly governed the proceedings in the petitioner's case, the law in this area continued to evolve while the petitioner's criminal and post-conviction proceedings were winding their way through the state courts. In April or May 2009, just a few months prior to the petitioner's conviction, Jason Lee White, a defendant in an unrelated case, was convicted in the Montgomery County Circuit Court of burglary, aggravated robbery, and especially aggravated kidnapping.[6] His attorney, unlike the petitioner's here, did request a due-process analysis by the trial court. When the trial court denied his motion to set aside his conviction for especially aggravated kidnapping, White appealed, arguing that the kidnapping conviction violated his right to due process under the Tennessee Constitution. The Tennessee Court of Criminal Appeals, applying *Dixon* and *Anthony*, reversed, concluding that the defendant had "successfully demonstrated that his movement of [the alleged kidnapping victims] was not beyond that necessary to complete his aggravated robbery." *State v. White*, No. M2009-00941-CCA-R3-CD, 2010 WL 1930951 (Tenn. Ct. Crim. App. May 12, 2010).

The state appealed and, in March 2012, the Tennessee Supreme Court reversed and remanded for a new trial. *State v. White* ("*White II*"), 362 S.W.3d 559 (Tenn. 2012). In *White II*, the Tennessee Supreme

---

[6] The defendant was convicted of robbing a White Castle Restaurant and kidnapping the restaurant employees during the process.

Court expressly overruled *Anthony*, *Dixon*, and *Richardson*, holding that a separate due-process analysis by the *court* was not required; instead, to satisfy the defendant's due process rights, the *jury* should be instructed to determine whether the victim's removal or confinement was essentially incidental to the accompanying felony offense. *White II*, 362 S.W.3d at 577–78. The court also expressly held, however, that the decision did *not* apply retroactively, except to cases still pending on direct review at the time *White* was decided. *See id.* at 578 ("[O]ur ruling does not articulate a new rule of constitutional law or require retroactive application.").

As noted above, the petitioner here was convicted in July 2009, less than two months after Jason White. Although his direct appeal in the Tennessee Court of Criminal Appeals was decided in March 14, 2011, while White's appeal to the Tennessee Supreme Court was pending, the petitioner here did not raise a due-process claim in the trial court, so that issue was waived for further review by the appellate courts. In any event, the Tennessee Supreme Court denied review in his case on May 25, 2011, so the petitioner's case was not still pending on direct review at the time *White II* was issued in 2012. In short, *White II* has no direct effect on the petitioner's IATC claims.

However, in the supplemental brief filed by appointed counsel, the petitioner further argues that, if trial counsel had raised the due-process issue in the trial court and thus preserved it for appellate review, the petitioner's case, like Jason White's, would ultimately have been remanded for a new trial. On this basis too, the petitioner argues that trial counsel's performance was deficient and that he was prejudiced by counsel's failure to raise a potentially meritorious claim.

### (b)     The Merits of the IATC Claim

Because the petitioner received two separate convictions for the kidnapping of two different victims, the Court must examine each conviction separately.

### (i) The Child Victim

Regarding the child victim, who was two years old at the time the event, the respondent argues that, because the daughter was not the victim of the petitioner's accompanying offenses of conviction, the conviction for kidnapping the daughter did not raise due-process concerns. (ECF No. 65, at 5 (citing *State v. Teats*, 468 S.W.3d 495 (Tenn. 2015).) The respondent is correct.

In *Teats*, the Tennessee Supreme Court held that, where a defendant was charged with robbing a restaurant manager and kidnapping four restaurant employees, "the due process concerns articulated in *White*

are not present, as the kidnapping of one or more victims can never be 'essentially incidental' to an offense perpetrated against a different victim or victims." *Teats*, 468 S.W.3d at 503. As the court explained:

> There is nothing fundamentally unfair about punishing the Defendant for kidnapping four victims and robbing another and no risk that the charged crime of robbery of the restaurant manager "could literally overrun" the crimes of kidnapping the four employees, whose confinement was not inherent in the robbery of the manager. While the Defendant may have decided to confine the four employees to facilitate the robbery of the manager, as it would be easier to commit the robbery by doing so, this decision is not deserving of due process protection.

*Id.* at 504 (quoting *Anthony*, 817 S.W.2d at 303).

The state supreme court has also confirmed that a due-process concern is raised only when a kidnapping conviction accompanies certain other specifically identified crimes, including robbery, rape, and assault. *Id.* at 502.[7] The court has specifically held that a separate due-process analysis or jury instruction is not required when the accompanying charge is aggravated burglary. *State v. Alston*, 465 S.W.3d 555, 564 (Tenn. 2015).

Thus, at issue here is whether the child kidnapping victim was also the victim of any accompanying charge that would have made it necessary to conduct a due-process analysis if one had been requested. As previously noted, the petitioner was charged with conspiracy to commit aggravated burglary, aggravated burglary, attempted aggravated robbery, and aggravated rape. The petitioner was not charged with or convicted of raping the child; the child therefore was not a victim of the rape conviction. Even assuming that the child was a victim of the aggravated burglary, that conviction did not qualify as an accompanying charge requiring a due-process analysis, under *Alston*, *supra*. Likewise, the conviction for conspiracy to commit aggravated burglary was not a qualifying felony.

Nor, under Tennessee law, was the child a victim of the attempted aggravated robbery. A state statute defines aggravated robbery, in relevant part, as a robbery accomplished with a deadly weapon, and robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. §§ 39-13-402(a), 39-13-401(a). The language of the indictment charging aggravated robbery alleged that the petitioner "did unlawfully and knowingly take property from Melody Pearce

---

[7] The criminal attempt of any of these predicate crimes also qualifies. *See Richardson*, 251 S.W.2d at 443 ("Our analysis does not differ when the kidnapping conviction is accompanied by a conviction for criminal attempt.").

[the adult victim] by violence or putting the said Melody Pearce in fear by use of a deadly weapon . . . in violation of [Tenn. Code Ann.] 39-13-402." (ECF No. 45-1, at 9.) The jury instructions outlining the elements of the charge of aggravated robbery closely tracked the language of the indictment and the statute:

> For you to find the defendant guilty of this offense [aggravated burglary], the state must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> (1) the defendant knowingly obtained or exercised control over property owned by Melody Pearce; and
>
> (2) the defendant did not have the owner's effective consent; and
>
> (3) the defendant intended to deprive the owner of the property; and
>
> (4) the defendant took such property from the person of another by the use of violence or by putting the person in fear; and
>
> (5) the defendant took such property knowingly; and
>
> (6) the defendant accomplished this act with a deadly weapon or by display of any article used or fashioned to lead the alleged victim to reasonably believe it to be a deadly weapon.

(ECF No. 45-1, at 106–07.) The jury convicted the petitioner of the lesser included offense of attempted aggravated robbery, which was defined in the instructions as requiring that (1) the defendant intended to commit the offense of aggravated robbery; and (2) the defendant did some act intending to complete a course of action that would constitute aggravated robbery. (*Id.* at 109.)

In other words, the child's mother was the only victim of the attempted aggravated robbery. Because the child was not the victim of any qualifying accompanying offense, the petitioner's conviction for kidnapping the child did not raise due-process concerns under Tennessee law. Under these circumstances, the trial court would not have been required to perform a due-process analysis (or to provide the jury with a due-process instruction) pertaining to the charge of kidnapping the child. Consequently, the petitioner cannot establish either that his trial attorney was ineffective or that he was prejudiced by his attorney's failure to request that the trial court conduct a *Dixon* due-process analysis of the conviction for kidnapping the child victim. *Cf. Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010) (counsel's failure to make a meritless motion does not constitute ineffective assistance of counsel); *Girts v. Yanai*, 501 F.3d 743, 753 (6th Cir. 2007). ("[C]ounsel cannot be ineffective for a failure to raise an issue that lacks merit.").

### (ii) The Adult Victim

At the time of the petitioner's conviction, it was well established that the question of "[w]hether a kidnapping conviction, separate from an accompanying offense, violates due process [was] a question of law to be determined initially by a trial court." *Richardson*, 251 S.W.3d at 442. The Tennessee state courts also recognized, however, that "the determination of whether a detention or movement is incidental to another offense [was] highly dependent on the facts in each case." *Anthony*, 817 S.W.2d at 306. Accordingly, both parties argue their respective positions with reference to the very specific facts at issue in this case, but this Court's resolution of the due-process issue does not require an evidentiary hearing.

The respondent argues that the adult victim's kidnapping met both prongs of the *Dixon* test. *Dixon*, 957 S.W.2d at 535. Specifically, she argues that the movement or confinement of the victim was "beyond that necessary to consummate" the rape or the robbery and that the movement or confinement was clearly intended to and did prevent the victim from summoning help, lessen the defendant's risk of detection, and increase the victim's risk of harm. (*See* ECF No. 65, at 8–9.) The respondent relies upon the fact that the adult victim's hands, feet, and mouth were duct-taped while she was also guarded at gunpoint throughout the ordeal. The respondent argues that the first prong of *Dixon* is met because "[t]hat added level of binding" by duct tape went beyond whatever confinement was necessary to consummate rape or robbery. The respondent also argues that the victim was confined during the beating of the family dog, which also was not necessary to the consummation of the attempted robbery or rape. Next, the respondent contends that the second prong of *Dixon* is met because the fact that the victim's hands, feet, and mouth were duct-taped effectively served to (1) prevent her from summoning help (because she could not yell, dial or speak into a telephone, or run for help); (2) lessen the defendant's risk of detection (again because she could not yell, dial or speak into a telephone, or run for help); and (3) created a significant risk of danger to the victim (for instance, by making it difficult for the victim to breath, raising a risk that she could aspirate and choke to death, cutting of the circulation of blood to her extremities, making it difficult to walk, and subjecting her to additional sexual assaults and indignities aside from the rape). (ECF No. 65, at 9.)

For his part, the petitioner minimizes the effect of the duct-taping and argues that the restraint of the victim was only that which was necessary to consummate the attempted aggravated robbery and the aggravated rape. He further insists that there is a "reasonable probability that had Porter's trial counsel moved

to dismiss the aggravated kidnapping charges in the trial court, he would have been successful." (ECF No. 59, at 14.) He points out that, under *Strickland*, a showing of prejudice does not require showing that counsel's deficient performance "more likely than not altered the outcome of the case." *Strickland*, 466 U.S. at 693. Instead, he only has to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. That is, he simply has to show that the result of the proceeding has been rendered unreliable and therefore unfair. *Id.*

The difficulty posed by the *Dixon* standard for determining when a kidnapping conviction violates due process under Tennessee law is illustrated by the widely varying outcomes in the Tennessee cases applying that standard and the fact that the Tennessee Supreme Court regularly overruled the appellate court's ruling on the due-process issue when *Dixon* was still the governing standard. For example, in *State v. Coleman*, 865 S.W.2d 455 (Tenn. 1993), upon which the petitioner relies, the defendant was convicted of armed robbery, aggravated rape, and aggravated kidnapping. The convictions were affirmed by the Tennessee Court of Criminal Appeals, but the aggravated kidnapping conviction was reversed by the Tennessee Supreme Court. There, the defendant and an accomplice had entered the business in which the victim was working and demanded money at gunpoint. The defendant emptied the cash register at the store where the victim was working and gave the money to his accomplice, who left the premises. The defendant then ordered the victim, at gunpoint, to move toward the back of the store and into a side room, where he ordered her to undress and then raped her, still at gunpoint. The defendant then told the victim she "better not get up," exited the room, and then stood outside the closed door for several minutes, telling the victim that he was watching her. *Id.* at 457. He eventually left the store, and the victim ran to the shop next door to call the police. The defendant argued on appeal that the facts were insufficient to support the kidnapping verdict and the Tennessee Supreme Court agreed, on the basis of *Anthony*, that the evidence did not support a separate conviction for kidnapping in addition to rape and therefore vacated the kidnapping conviction. *Id.* at 458.

In *Dixon*, however, the appellate court had struck down a kidnapping conviction. The state appealed and the Tennessee Supreme Court reversed again, this time holding that the separate convictions for aggravated kidnapping, aggravated assault, and attempted sexual battery did not violate due process. The evidence showed that the defendant had approached the victim from behind while she was walking down a lighted street, slammed her to the ground, and dragged her thirty to forty feet from the illuminated sidewalk

to bushes growing at the back of an adjacent vacant lot, where he attempted to sexually assault her. *Dixon*, 957 S.W.2d at 535.The Tennessee Supreme Court attempted to distinguish the facts from those in *Coleman*, stating:

> In *Coleman*, while there was movement which exceeded that necessary to consummate the act of rape, there was no finding that the movement decreased the probability of detection, prevented the victim from summoning help, or increased the risk of harm. In the case now before us, we have testimony that the movement lessened the risk of detection.

*Dixon*, 957 S.W.2d at 535–36. *Dixon* further held, *Coleman* notwithstanding, that "*any restraint* in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping." *Id.* at 534 (emphasis added).

In *State v. Richardson*, 251 S.W.3d 438 (Tenn. 2008), the defendant had attempted to rob two managers at a Calhoun's restaurant but was ultimately unable to open the safe. He pleaded guilty to attempted especially aggravated robbery and was convicted by a jury on two counts of kidnapping. The appellate court had reversed the kidnapping convictions on the basis that they violated due process but the Tennessee Supreme Court reinstated them, specifically finding with respect to one of the victims that, while her movement to and confinement in a stockroom during the attempted robbery might have been "helpful" to the defendant, they were beyond what was necessary to consummate the attempted especially aggravated robbery. In addition, the confinement in the stockroom and the use of duct tape to bind the victim's hands behind her were admittedly for the purpose of preventing the victim from calling the police, which also lessened the risk of detection and increased the risk of harm by leaving the victim's injuries—sustained during the course of the attempted robbery—untreated. *Id.* at 444. Likewise, the defendant's beating of the second victim and moving her to another room were not necessary for the consummation of the attempted robbery and were admittedly for the purpose of shutting her up, thus preventing her from summoning help and decreasing the risk of detection. *Id.* at 445.

In *State v. Fuller*, 172 S.W.3d 533 (Tenn. 2005), the appellate court had reversed the defendant's kidnapping conviction and the state supreme court again reversed and reinstated the conviction. In doing so, the court noted that "[t]he act of tying up or binding a victim during the course of a robbery, standing alone" will not always justify a separate conviction for kidnapping but that, under the facts of the case before it, the binding of the victim was not essentially incidental to the underlying robbery, which by then had already been

consummated. *Id.* at 538. In addition, it lessened the robbers' risk of detection while they tried to locate the townhouse they had originally intended to rob because it was intended to prevent her from calling the police. It also increased the risk of harm because it made her vulnerable to the additional assault she suffered when the robbers returned. *Id.; see also State v. Jones*, W2004-01628-CCA-R3-CD, 2005 WL 1848476, at *3 (Tenn. Ct. Crim. App. Aug. 4, 2005), *perm. to appeal denied* (Tenn. Dec. 19, 2005) (finding that handcuffing the victims, in addition to subduing them with the display of a handgun, "hindered [the victims'] efforts to seek aid, increased their risk of harm, and lessened the defendant's risk of detection," thus justifying the kidnapping convictions on top of the robbery convictions).

In light of Tennessee Supreme Court precedent as it existed at the time of the petitioner's trial in 2009, and focusing solely on the issue of whether *trial* counsel was ineffective and whether the petitioner was prejudiced by any deficiency, the Court finds that, even if the petitioner's trial attorney had requested a due-process analysis, there is only a very remote possibility that the trial court would have granted the request and set aside the conviction. This remote possibility does not satisfy *Strickland*'s "reasonable probability" standard. The fact that the adult victim's hands, feet, and mouth were duct-taped, even though the victim was also subdued at gunpoint, fairly dictates a conclusion that the degree of restraint went beyond that necessary for the consummation of the attempted robbery or the rape, for purposes of the first prong of the *Dixon* analysis. As for the second prong, the duct-taping had the effect of preventing the victim from screaming, using the phone, or running for help. The fact that she was able to free herself from the bindings after the perpetrators left her house does not compel a different conclusion. *Cf. Fuller*, 172 S.W.3d at 537 ("[T]he ultimate success of the confinement is not an integral part of the test."); *Jones*, 2005 WL 1858476, at *2 ("That the police arrived and interrupted the crimes, preventing further physical harm to the victims, does not change the analysis. The handcuffing of the victims would have hindered their efforts to seek aid, increased their risk of harm, and lessened the defendant's risk of detection."). Because the kidnapping conviction in this case did not violate due process under Tennessee law, the petitioner cannot establish that he was prejudiced by trial counsel's failure to request a due-process analysis under *Dixon*.

Admittedly, the frequency with which the state supreme court overruled the appellate court on this issue illustrates the difficulty the state courts had in applying *Dixon* and supports the holding in *White II*, discussed above: that it is better for a jury to decide the issue. In light of the difficulty of the *Dixon* analysis and

the timing of the *White II* decision, it is conceivable that, if trial counsel had actually requested a due-process analysis, thus preserving the issue for appeal, and if appellate counsel had then appealed the issue all the way to the Tennessee Supreme Court, that court might have remanded the case for a new trial at which the jury would have received the instruction outlined in *White II* regarding kidnapping convictions that accompany other charges. The petitioner here invokes just this scenario in exhorting the Court to find that trial counsel was ineffective and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court nonetheless finds that the petitioner's position is entirely too dependent upon speculation, particularly speculation that appellate counsel would have appealed an adverse decision all the way to the Tennessee Supreme Court if not for the default at the trial level. Reasonable probability cannot arise from such rank speculation.

In sum, the Court concludes that the petitioner cannot establish that he would be entitled to relief on his underlying IAC claim, for purposes of establishing prejudice under either the *Coleman/Martinez* analysis or under *Strickland*. The Court will therefore deny relief on the basis of this claim.

**B.    Claim 33**

In Claim 33, the petitioner asserts that "defense counsel" was "ineffective on first tier direct appeal in failing to file a motion to stay the proceeding" while he pursued a petition for the writ of error *coram nobis* based on an allegedly exculpatory statement made by the victim during the petitioner's sentencing hearing. (ECF No. 1, at 28.) In the previously filed memorandum opinion directing additional briefing, the Court indicated that it was inclined to liberally construe this claim as one raising the ineffective assistance of *trial* as well as appellate counsel. In his supplemental memorandum, the petitioner argues his claim as one of IATC based on the timing of the events giving rise to the claim, specifically that: (1) trial counsel became aware of the new evidence shortly after the sentencing hearing and before the judgment became final; and (2) under state procedural rules, the motion for error *coram nobis* should have been brought in the trial court.

In support of this claim, the petitioner asserts that during the sentencing hearing, several of his family members overheard the victim telling her husband that Mr. Porter was not the man who had guarded and then raped her during the burglary of her home. The victim purportedly heard the petitioner speak for the first time at the sentencing hearing and did not recognize his voice or speech pattern as that of the man who had raped her. The petitioner did not raise this issue in his written motion for a new trial. During the hearing on that

motion, however, the petitioner's attorney raised this issue and introduced as an exhibit a letter from the petitioner's mother to the attorney stating what she had overheard. (ECF Nos. 45-8 (Motion for New Trial Hr'g ("MNTH") Tr.), 45-9 (Letter).) Despite bringing the letter to the court's attention, counsel did not subsequently move to stay proceedings to allow time to further investigate the new evidence and he did not pursue *coram nobis* relief.

The petitioner raised this issue in his initial *pro se* post-conviction petition and even included with his filing the affidavits of two family members who alleged that they overheard the victim's statement to her husband. (ECF No. 45-19, at 56, 58.) He argues now that (1) the claim was procedurally defaulted for all the same reasons that Claim No. 27 was procedurally defaulted; (2) "on the existing record," the claim is a substantial IATC claim insofar as the claim has "some merit" and is not "wholly without factual support" (ECF No. 59, at 26); and (3) post-conviction counsel was ineffective for failing to raise the underlying IATC claim in initial-review post-conviction proceedings. The petitioner asks the Court to set an evidentiary hearing at which he can establish the merits of Claim 33 and thus prejudice arising from its default. The petitioner does not provide a summary of any evidence that he intends to present during such a hearing.

The respondent counters that it is not reasonable to construe the claim as based on the ineffectiveness of trial counsel, when the petitioner himself specifically framed the claim as based upon a failure by counsel at the "first tier direct appeal" and demonstrated throughout his petition that he understood the distinction between trial counsel and appellate counsel. The respondent further asserts that the claim is procedurally defaulted and that, because it solely concerns the ineffectiveness of appellate counsel, *Martinez* does not apply. In the alternative, the respondent argues that even if the claim is construed to be based upon trial counsel's ineffectiveness, it is not saved by *Martinez* because the petitioner cannot establish cause and prejudice to overcome the procedural default.

Upon re-examining this issue, the Court is persuaded that the petitioner's claim is one of ineffective assistance of *appellate* counsel. As the respondent argues, the claim is unambiguously articulated as one of ineffective assistance of appellate counsel. Moreover, the petitioner was undoubtedly aware that his attorney raised the issue of the purported new evidence in the hearing on the motion for a new trial and apparently contends that his appellate counsel was deficient for not further pursuing the issue on appeal or by staying the appeal and filing a *coram nobis* petition. The Court also finds that the claim is procedurally defaulted: It

was raised in the motion for a new trial but not pursued on appeal. And, as with Claim 27, the petitioner's raising it in his Rule 39 motion did not serve to exhaust it. Under current Sixth Circuit law, *Martinez* does not provide a basis for overcoming the procedural default of a claim of ineffective assistance of appellate counsel. *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013). The petitioner is therefore not entitled to relief on the basis of this claim.

Regardless, even if the Court continued to construe the claim as asserting that trial counsel was ineffective for failing to file a motion to stay and a *coram nobis* petition, the claim is not sufficiently "substantial" to provide cause to overcome the procedural default, under *Martinez*. First, trial counsel actually raised the issue at the hearing on the motion for a new trial, bringing to the trial court's attention the petitioner's mother's letter stating that witnesses had heard the victim tell her husband that the petitioner was not the person who raped her. In closing argument, the petitioner's attorney asked the court to "bifurcate and allow an amendment of the motion for a new trial and the ability to bring in proof. Perhaps even hold Mr. Porter here until the Court could hear proof on that matter." (ECF No. 45-8 (MNTH Tr.), at 17–18.) The trial court denied that request, but the record reflects that trial counsel essentially did what the petitioner claims he was ineffective for not doing.

More to the point, under Tennessee law, *coram nobis* relief is only available based on matters outside the record and that "were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal," or otherwise. Tenn. Code Ann. § 40-26-105(b); *Wlodarz v. State*, 361 S.W.3d 490, 506 (Tenn. 2012). Because this matter was raised and could have been further explored during the motion for a new trial, neither trial counsel nor appellate counsel erred by failing to file a petition for writ of error *coram nobis*.

The petitioner is not entitled to relief on the basis of this claim.

## V.    CONCLUSION

For the reasons set forth herein, the Court will deny relief on the basis of Claims 27 and 33. Having denied relief on all claims asserted by the petitioner, the Court will dismiss the petition and enter judgment in favor of the respondent.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA

may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

Under this standard, the Court will grant a COA on Claims 27 and 33 as they pertains to the ineffective assistance of both trial and appellate counsel. The remaining claims do not merit further review. The Court will deny a COA as to all other claims asserted in the habeas petition.

An appropriate order is filed herewith.


_____
TODD CAMPBELL
United States District Judge